UNITED STATES DISTRICT COURT
Southern District of Florida
West Palm Division
Case Number: 9:12-cv-81022-MIDDLEBROOKS/BRANNON

NETTALK.COM, INC., a Florida
corporation,

    Plaintiff,

vs.

MAGICJACK VOCALTEC LTD., an
Israel limited partnership; MAGICJACK
LP, a Delaware limited partnership;
MAGICJACK HOLDINGS
CORPORATION f/k/a YMAX
HOLDINGS CORPORATION, a Delaware
corporation; and DANIEL BORISLOW, an
individual and citizen of the State of
Florida,

    Defendants.
_____/

## PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF

    Plaintiff, netTalk.com, Inc. ("Plaintiff"), by undersigned counsel, and pursuant to the Court's Order on Joint Motion to Continue Pretrial Deadlines [D.E. No. 47], hereby submits its opening Claim Construction Brief for the claims of United States Patent Number 8,243,722 B2 and C1 (collectively the "'722 Patent"), that Plaintiff asserts against the defendants.

    I.    **INTRODUCTION**

    Plaintiff respectfully submits this opening Claim Construction Brief for the '722 Patent. The '722 Patent, attached hereto as Composite Exhibit A, contains three claims, two of which are independent claims. United States Patent Number 8,243,722 B2 was the original patent issued by the United States Patent and Trademark Office ("USPTO") to Plaintiff. Plaintiff instituted the above-captioned litigation against defendants asserting infringement of

the '722 B2 patent. At around the same time, one of the defendants requested the USPTO initiate an *ex parte* reexamination regarding the '722 B2 patent. The USPTO granted the request for *ex parte* reexamination and this Court, upon motion of the defendants, stayed the above-captioned litigation. After amendment, the USPTO again allowed all three claims of the '722 Patent and issued a reexamination certificate, resulting in the '722 C1 patent. Plaintiff is seeking damages from the time of publication of the patent application that ultimately resulted in issuance of the '722 B2 patent. The Parties seek construction of language from the '722 C1 patent.[1]

The parties dispute whether the language of the preamble is limiting on the scope of the claims. The parties also dispute the meanings of the following terms used in claims 1and 3: (1) "memory source"; (2) "multiple separate and independent internet access connections;" (3) "plug-n-play functionality"; (4) "the ATA to auto configure to operate using an independent internet access connection selected by the user"; (claim 1) and "the ATA to auto configure to use an internet access connection selected by the user (claim 3)";[2] (5) "the ATA to auto configure to use an internet access connection without a computer connection"; (6) "the ATA auto configures to operate using the user selected internet connection"; (7) " multi-port plug-in-play approach"; (8) "the ATA automatically detects a type of internet connection selected by the user, which connection is automatically detected without a computer connection"; and (9) "said modem".[3]

The Court should adopt Plaintiff's proposed claim constructions for the disputed terms because Plaintiff's' proposed constructions adhere to the legal principles governing claim

---

[1] Plaintiff believes that the terms the Parties seek to have this Court construct are either (1) identical to the terms in the '722 B2 patent or (2) are non-existent in the '722 B2 patent and therefore do not require construction in the '722 B2 patent.

[2] These terms have minor variations. The Parties have agreed that they should be construed identically.

[3] The parties have agreed to the meaning of the term "non-transitory storage medium" in Claims 1 and 3. *See* D.E. 65.

construction, align with the intrinsic and extrinsic evidence, and are set within a coherent framework consistent throughout all claims.  On the other hand, Defendants' proposed constructions depart substantially from Federal Circuit precedent, find little or no support in the intrinsic record, or, at worst, completely misinterpret the intrinsic record by attempting to apply descriptions of prior art to the '722 Patent, and present a patchwork and inconsistent view of the '722 Patent.

Claims 1 and 3 of the '722 patent are reproduced below:

1. A Voice over Internet Protocol (VoIP) telephone system that enables VoIP telephony and facsimile services allowing a user to gain access to telephone connectivity between an analog handset telephone and the internet, said system having multiple separate and independent internet access connections for connecting to the internet, each separate internet connection selectable by the user comprising:

an analog telephone for transmitting and receiving sound;

an analog telephone adapter (ATA) comprising a rigid housing, said housing containing a central processor, a non-transitory storage medium, a memory source, a network interface card (NIC),

said ATA housing having at least one USB port, an Internet input, and a telephone port;

said analog telephone connected to said ATA telephone port for transmission and receipt of electronic signals from the ATA;

said ATA being configured for multiple separate and independent internet access connections wherein each of the separate internet connections is selectable by the user,

said ATA providing plug-in-play functionality, wherein the plug-in-play functionality allows the ATA to auto configure to operate using an independent internet access connection selected by the user; and

wherein the plug-in-play functionality allows the ATA to auto configure to use an internet access connection without a computer connection; and

wherein the internet connection provided by the ATA comprises a multi-port plug-in-play approach, to optionally be connected by a user to either a first internet

access connection or a second different internet access connection or third different internet access connection and to a switched telephone network through the internet such that it can transmit and receive telephone calls without the analog telephone being wired through a PSTN,

wherein the ATA automatically detects a type of internet connection selected by the user, which connection is automatically detected without a computer connection; and

wherein the ATA auto configures to operate using the user selected internet connection;

said system having said first internet access connection including said ATA connected to a computer, a USB cord connected to said computer and to said USB port in said analog telephone adapter, a modem connected to said computer, and said modem connected to said internet;

said system having said second different internet access connection including said ATA connected to a USB electronic plug adapter, a USB plug cord connected to said USB plug adapter and said analog telephone adapter (ATA) USB port, an Ethernet cord, a router connected directly or indirectly to said Ethernet cord, said analog telephone adapter connected to said Ethernet cord, said modem connected to said internet, said analog telephone adapter powered by said USB plug adapter; and

said system having said third different internet access connection including said ATA connected to a wireless router connected to the internet, Wi-Fi adapter connected to said analog telephone adapter including the analog telephone adapter NIC component, a USB electric plug adapter connected to said analog telephone adapter to provide power; and

whereby a user of said analog telephone can call other telephone handset users over the internet using said first internet access connection or said second internet access connection or said third internet access connection using said ATA.

3. A Voice over Internet Protocol (VoIP) telephone system that enables VoIP telephony and facsimile services allowing a user to gain access to telephone connectivity between an analog handset telephone and the internet, said system having multiple separate and independent internet access connections for connecting to the internet, each separate internet connection selectable by the user comprising:

an analog telephone for transmitting and receiving sound;

an analog telephone adapter (ATA) comprising a rigid housing, said housing containing a central processor, a non-transitory storage medium, a memory source, a network interface card (NIC),

said ATA housing having at least one USB port, an Internet input, and a telephone port;

said analog telephone connected to said ATA telephone port for transmission and receipt of electronic signals from the ATA;

said ATA being configured for multiple separate and independent internet access connections wherein each of the separate internet connections is selectable by the user,

said ATA providing plug-in-play functionality, wherein the plug-in-play functionality allows the ATA to auto configure to use an Internet access connection selected by the user; and

wherein the plug-in-lay functionality allows the ATA to auto configure to use an internet access connection without a computer connection; and

wherein the Internet connection provided by the ATA comprises a multi-port plug-in-play approach, to optionally be connected by a user to either a first internet access connection or a second different internet access connection and to a switched telephone network through the internet such that it can transmit and receive telephone calls from other telephone handsets without the analog telephone being wired through a PSTN,

wherein the ATA automatically detects a type of internet connection selected by the user, which connection is automatically detected without a computer connection; and

wherein the ATA auto configures to operate using the user selected Internet connection;

said system having said first internet access connection including said ATA connected to a computer, a USB cord connected to said computer and to said USB port in said analog telephone adapter, a modem connected to said computer, and said modem connected to said internet;

said system having said second different internet access connection including said ATA connected to a USB electronic plug adapter, a USB plug cord connected to said USB plug adapter and said analog telephone adapter (ATA) USB port, an Ethernet cord, a router connected directly or indirectly to said Ethernet cord, said analog telephone adapter connected to said Ethernet cord, said modem connected to said internet, said analog telephone adapter powered by said USB plug adapter; and

whereby a user of said analog telephone can call other telephone handset users over the internet using said first internet access connection or said second internet access connection using said ATA.

5

## II.     ARGUMENT

### A.     Legal Principles Governing Claim Construction.

Claim construction is a matter of law that is determined by the court. *Markman v. Westview Instruments, Inc., 517* U.S. 370, 384-91 (1996).  "We have made clear . . . that the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of invention."  *Phillips v. AWH Corp.,* 415 F.3d 1303, 1312-13 (Fed. Cir. 2005).[4]  Ordinary meaning may be determined by reviewing a variety of sources, both intrinsic and extrinsic.  *Teleflex, Inc. v. Ficosa North Am. Col- p.,* 299 F.3d 1313, 1324-25 (Fed. Cir. 2002).  Yet, where the "specification [reveals] a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess[,] . . . the inventor's lexicography governs."  *Phillips,* 415 F.3d at 1316.  In construing the claims, the court should seek to "preserve the patent's internal coherence."  *See Markman,* 517 U.S. at 389-90; *see also Phillips,* 415 F.3d at 1314 (relying on the assumption that "claim terms are normally used consistently throughout the patent").

When the meaning of a claim term is in dispute, courts primarily look to the intrinsic evidence in the record, i.e. the patent itself, including its claims, the specification, and the prosecution history.  *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed. Cir. 1996).  As a starting point, "the claims themselves provide substantial guidance as to the meaning of particular claim terms."  *Phillips,* 415 F.3d at 1314.  The claims, however, "must be read in view of the specification, of which they are a part."  *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd, 517* U.S. 370.  In fact, the Federal

---

[4] Plaintiffs' expert witness Frank Koperda has opined that a person of ordinary skill in the art at the time of invention is an engineer with at least an undergraduate or higher degree in electrical engineering, computer science, computer engineering, or a related discipline and several years of professional or research experience (e.g., at least three years) in the design and implementation of computer or telecommunications networks.  The Declaration of Frank Koperda is attached hereto as Exhibit B.

Circuit has designated the specification "the single best guide to the meaning of a disputed term." *Vitronics,* 90 F.3d at 1582. Additionally, courts consider "the complete record of the proceedings before the PTO[, including] the prior art cited during examination" as evidence of the inventor's understanding of the patent. *Phillips,* 415 F.3d at 1317. Extrinsic evidence such as dictionaries, treatises, and/or expert testimony may also be helpful in construing patent claims. *Id.* at 1317-18. All extrinsic evidence, however, should be considered in the context of the intrinsic evidence. *Id.* at 1319.

While the claims should be read in view of the specification, Federal Circuit precedent establishes that "limitations from the specification are not to be read into the claims." *Telejiex,* 299 F.3d at 1326. "The specification does not "delimit[ ] the scope of legal protection." *See Arlington Indus. v. Bridgeport Fittings, Inc.,* 632 F.3d 1246, 1255 n.2 (Fed. Cir. 2011). Rather, "[c]laims define and circumscribe, the written description discloses and teaches." *Id.* (quoting *Ariad Pharms., Inc. v. Eli Lilly & Co.,* 598 F.3d 1336, 1347 (Fed. Cir. 2010) (internal quotations omitted). "The patentee may demonstrate an intent to deviate from the ordinary and accustomed meaning of a claim term by including in the specification expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope," *Teleflex,* 299 F.3d at 1325.[5]

"[B]ecause the prosecution history represents an ongoing negotiation between the PTO and the applicant . . . it often lacks the clarity of the specification and thus is less useful." *Phillips,* 425 F.3d. at 1317; *see also Inverness Med. Swizz. GmbH v. Warner• Lambert Co.,* 309 F.3d 1373, 1380-82 (Fed. Cir. 2002) (ambiguity of the prosecution history diminished its

---

[5] In addition, this prohibition against creating additional limitations not present in the claims includes attempts to limit a structural claim term by also requiring a function. *Comark Commc'ns, Inc. v. Harris Corp.,* 156 F.3d 1182, 1186-87 (Fed. Cir. 1998); *see also Toro Co. v. White Consol. Indus., Inc.,* 266 F.3d 1367, 1371 (Fed. Cir. 2001) ("An invention claimed in purely structural terms generally resists functional limitation."); *see also Ecolab v. Envirochem, Inc.,* 264 F.3d 1358, 1367 (Fed. Cir. 2001) ("Where the function is not recited in the claim itself by the patentee, we do not import such a limitation.").

relevance to claim construction). Courts should not limit claim language based on the prosecution history unless "the alleged disavowing actions or statements made during prosecution [are] both clear and unmistakable." *Omega Eng 'g, Inc. v. Raytek Corp.,* 334 F.3d 1314, 1325-26 (Fed. Cir. 2003). A statement or argument made during prosecution cannot constitute a "clear and unmistakable disclaimer" if it is "subject to more than one reasonable interpretation, one of which is consistent with a proffered meaning of the disputed term." *SanDisk Corp. v. Memorex Prods., Inc.,* 415 F.3d 1278, 1287 (Fed. Cir. 2005); *see also Inverness Med.,* 309 F.3d at 1382 (refusing to limit a broad definition of a claim in light of alternate plausible explanations of the prosecution history). In assessing the clarity of an alleged disclaimer, "the prosecution history must be examined as a whole" to determine whether "a competitor would reasonably believe that the applicant had surrendered the relevant subject matter." *Bayer AG v. Elan Pharm. Research Corp.,* 212 F.3d 1241, 1252 (Fed. Cir. 2000).

### B.     The Preamble is not limiting.

The preambles of claims 1 and 3 are not limiting because they do not recite "essential structure or steps" nor are they "necessary to give life, meaning, and vitality" to the claim. In general, a preamble is construed as a limitation "if it recites essential structure or steps, or if it is 'necessary to give life, meaning, and vitality' to the claim." *Symantec Corporation v. Computer Associates International, Inc.*, 522 F.3d 1279 (Fed.Cir.2008). Absent clear reliance on the preamble in the prosecution history, or in situations where it is necessary to provide antecedent basis for the body of the claim, the preamble "generally is not limiting." *Id., quoting Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 809 (Fed.Cir.2002). One guidepost for ascribing meaning to a claim preamble established in Symantec is a prosecution history of

8

argument based on the preamble. Here, as in *Symantec*, there is no evidence that the preamble had its "own independent significance" or that the applicant demonstrated "clear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art." *Id*. Therefore the preamble should not be used as a limitation of the scope of claims 1 and 3.

### C. "Memory source" does not require construction.[6]

"Memory source" is not indefinite. The Supreme Court recently clarified the indefiniteness standard in *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120 (2014). "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Id.* at 2124. Claims must "inform those skilled in the art about the scope of the invention with reasonable certainty." *Id*. at 2129. While clarity is mandated, the Nautilus court recognized "that absolute precision is unattainable." *Id. Nautilus* provided a standard in accordance with prior Supreme Court opinions stating that "the certainty which the law requires in patents is not greater than is reasonable, *having regard to their subject-matter*." *Id.* (*quoting Minerals Separation, Ltd. v. Hyde*, 242 U.S. 261, 270 (1916)) (emphasis added). Thus, the definiteness of a particular claim must be reasonable, and must be considered in relation to the field of the patent.

"First, definiteness is to be evaluated from the perspective of someone skilled in the relevant art. Second, in assessing definiteness, claims are to be read in light of the patent's specification and prosecution history. Third, "[d]efiniteness is measured from the viewpoint of a person skilled in [the] art *at the time the patent was filed*." *Nautilus, Inc.*, 134 S. Ct. at 2128)(citation omitted).

---

[6] The remaining proposed claim constructions in this brief are supported by the Declaration of Frank Koperda.

9

Here, the term "memory source" is not indefinite. Evaluating the term from someone skilled in the relevant art, Plaintiff's expert, Frank Koperda, has opined that the term "memory source" is well known to those of ordinary skill in the art and informs, with reasonable certainty, those of ordinary skill in the art of the scope of the '722 Patent. *See* Exhibit B. Moreover, when reading the claims in light of the specification and prosecution history, it is clear the purpose of the memory source as used in the '722 Patent, adding further, albeit unneeded, clarity to the understanding of that term to those of ordinary skill in the art.

Given the term "memory source" has a definite meaning for those skilled in the art at the time the patent was filed, there is no need to further construe the term and it is not indefinite.

> **D.     "Multiple separate and independent internet access connections" means "the ATA can be connected to the Internet either directly or indirectly, with the ability to use several means of connecting to establish telephone communications".**

The Court should construe the phrase "multiple separate and independent internet access connections" to mean "the ATA can be connected to the Internet either directly or indirectly, with the ability to use several means of connecting to establish telephone communications." The claim language itself provides evidence in favor of Plaintiff's proposed construction. The plain claim language indicates that "connections" is the noun and "multiple separate and independent internet access" are adjectives that modify the noun "connections." In other words, "separate and independent internet access connections" refers to certain types of connections, which are themselves clearly defined within the '722 Patent, and "multiple separate and independent internet access connections" refers to a plurality of "separate and independent internet access connections."

Plaintiffs' proposed construction of "multiple separate and independent internet access connections" reflects its ordinary and customary meaning and is consistent with the intrinsic and extrinsic record. In fact, the Plaintiffs draw the proposed construction of the term directly from the specification. The '722 patent specification includes the following description in the specification:

> It is an object of this invention to provide a VoIP analog telephone system that can be connected to the Internet either directly or indirectly, with the ability to use several means of connecting to establish telephone communications.

'722 Patent, col. 3., ln. 23-26. This clear language in the specification should control the interpretation of this term.

Furthermore, Figures 5-8 of the '722 Patent illustrate the multiple separate and independent internet access connections contemplated in the claims. In the illustrations, the ability of the invention to use several means of connecting to establish telephone communications is shown through various different connections to the internet:



'722 Patent, Figures 5 – 8.

Additionally, beyond the specific the text cited above, additional portions of the specification of the '722 Patent provide further support for Plaintiff's proposed construction:

> The user can gain access to telephone connectivity either through the USB port of any computer or cell phone like devices with Internet access, through an RJ 45 port connected to a switch, modem, or router without the need of a computer, or via a built-in Wi-Fi receiver without the need for a computer connection. The wireless connection through cell phone like devices can be through a GSN, EVDO, CODMA, and/or WIMAX network or other wireless networks.

'722 Patent, col. 2, ln. 58-65.

Defendants' proposed construction improperly attempts to import limitations (i.e., "access points") from a description of cited prior art (not even the prior art itself) into the Plaintiff's claims.  *See* D.E. 65, pp. 7-8.  Federal Circuit precedent uniformly warns against precisely this error of interpretation.  *See, e.g., Teletex,* 299 F.3d at 1326.  While Defendants maintain that passages in the intrinsic record disclose, discuss, and/or describe their construction requiring access points in the housing of the ATA, mere disclosure, discussion, and/or description alone is not enough.  Rather, the specification must evince, "a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction." *IvIartek Biosciences Corp. v. Arutrinova, Inc.,* 579 F.3d 1363, 1381 (Fed. Cir. 2009).  None of the passages cited by the Defendants evince such an intention.  At most, the Defendants' cited intrinsic evidence indicates that the ATA has a housing with elements which provide the internet access connections; a far cry from an explicit requirement that the multiple separate and independent internet access connections should be defined as "multiple separate and independent internet access points in the housing of the ATA by which the ATA makes an Internet connection and places and receives VoIP calls." *See* D.E. 65.  The Court should not improperly

restrict "multiple separate and independent internet access connections".  The Plaintiff's construction should be used.

Additionally, it is improper here to read a functional limitation into a structural claim element.  *See, e.g., Thro Co.,* 266 F.3d at 1371 ("This court's claim construction, however, did not and could not import into the claim a function from the specification, particularly when the claim recites only purely structural limitations."); *see also Comark Comme'ns,* 156 F.3d at 1186-87 (refusing to limit the claimed phrase by a function described in a preferred embodiment).  Here, Defendants attempt to append functional language ("*by which the ATA makes an Internet connection and places and receives VoIP calls*") to a purely structural (but unsupported) claim element ("points").  Defendants' proposed construction fails for this additional reason.  The Court should adopt Plaintiff's proposed construction.

> E. "Plug-in-play functionality" Means "automatically detecting the internet access connection selected by the user and automatically configuring itself so said connection is used by the ATA".

The Court should construe "plug-in-play functionality" to mean "automatically detecting the internet access connection selected by the user and automatically configuring itself so said connection is used by the ATA."

The intrinsic evidence supports this definition.  The Specification of the '722 Patent clearly states:

> The system itself is plug-in-play and may have a CD that will help to install drivers on the computer connected to the Internet.  The multi-port functional approach is also plug-in-play.  The telephone functionality is auto configured and the ATA will take the user configuration from the network.  The user sets the user account from a web page.  The ATA can be identified by its MAC address and/or a serial number that can be electronically webbed.

'722 Patent, col. 3, ln. 15-23.  Furthermore, the Plaintiff consistently applies this definition in its *Response and Amendment to Non-Final Office Action in Ex Parte Reexamination* dated May 15, 2013 at p. 9:

> Since the invention is a plug in play device, device configuration and user intervention is not needed to resolve any conflicts in the installation or use of the device."

And again in Exhibit A to the May 15, 2013 response:

> In computing, a **plug and play** device or computer bus, is one with a specification that facilitates the discovery of a hardware component in a system without the need for physical device configuration or user intervention in resolving resource conflicts."

(emphasis in original).  In addition, the Plaintiff's arguments in the *Supplemental Patent Owner's Statement of the Interview Under 37 C.F.R. § 1.560(b)* are consistent with Plaintiff's proposed definition.

Looking to extrinsic evidence, Plaintiffs' proposed construction is also consistent with common usage.  In relevant references, "plug and play" is defined consistently with Plaintiff's interpretation. See THE FREE ONLINE DICTIONARY OF COMPUTING, http://foldoc.org/plug+and+play (last accessed May 27, 2014)("Hardware or software that, after being installed ('plugged in'), can immediately be used ('played with'), as opposed to hardware or software which requires configuration.").  Additionally, Plaintiff's expert has opined that Plaintiff's proposed definition is in accord with what one of ordinary skill in the art would have understood at the time of the invention, as well in accord with both the prosecution history and the history upon reexamination.  Thus Plaintiff's construction is proper and the Court should adopt Plaintiff's proposed construction.

>
> **F.** **"[T]he ATA to auto configure to operate using an independent internet access connection selected by the user" (claim 1) and "the ATA to auto configure to use an internet access connection selected by**

>       **the user" (claim 3) both mean that "the ATA automatically configures to use the connection selected by the user and can be used without requiring additional configuration"[7].**

The Court should construe the phrase " the ATA to auto configure to use an internet access connection selected by the user" to mean "the ATA automatically configures to use the connection selected by the user and can be used without requiring additional configuration."  As demonstrated above in the context of "plug-in-play," the intrinsic evidence itself proves Plaintiffs' proposed construction.  The specification indicates that "the multi-port functional approach is also plug-in-play." *See e.g.* '722 Patent, col. 3, ln. 17-18.  In addition, the '722 Patent states, "The telephone functionality is auto configured and the ATA will take the user configuration from the network."  '722 Patent, col. 3, ln. 18-19.  This definition is consistent with the *Response and Amendment to Non-Final Office Action in Ex Parte Reexamination* dated May 15, 2013, *Affidavit of Kenneth Hosfeld,* and *the Supplemental Patent Owner's Statement of the Interview Under 37 C.F.R. § 1.560(b).*  Moreover, specific references were made by the Patent Office in the Notice of Allowance and Fees Due issued by the USPTO.  *See '722 Patent File Wrapper, Notice of Allowance and Fees Due.*  Thus, even if the Court were inclined to consider extrinsic evidence – which it should not – the extrinsic evidence supports Plaintiff's proposed construction.  Moreover, Plaintiff's proposed construction keeps the interpretation of this specific claim term consistent with the other terms for which construction is sought, set forth herein.

Defendants' proposed construction is deficient for the same reasons set forth above in the context of "plug-in-play."  These reasons include the fact that Defendants' proposed construction imports the requirement of use of "an access point on its housing" which appears

---

[7] As mentioned above the language in claims 1 and 3 only have minor variations, and the Parties have agreed that they may be construed identically.  Plaintiff shall make arguments relating to claim 3 in this brief but applies the arguments to the minor variation in the language present in claim 1 as well.

15

nowhere in the record of intrinsic evidence. *See Ecolab,* 264 F.3d at 1366 (Fed. Cir. 2001). Additionally, defendants' proposed construction ignores the intrinsic evidence as well as the prosecution history of the '722 Patent for the reasons set forth hereinabove. Therefore, this Court should adopt Plaintiff's proposed construction.

> **G. "The ATA to auto configure to use an internet access connection without a computer connection" means "the ATA automatically configures to use the connection selected by the user without requiring additional configuration by the user and without the need for a computer connection".**

Plaintiffs' proposed construction of "the ATA to auto configure to use an internet access connection without a computer connection" ("the ATA automatically configures to use the connection selected by the user without requiring additional configuration by the user and without the need for a computer connection") is supported by the intrinsic and extrinsic record.

The specification supports Plaintiffs' construction and reflects the understanding of a person of ordinary skill in the art at the time of invention. For instance, the specification states, "The telephone functionality is auto configured and the ATA will take the user configuration from the network." '722 Patent, col. 3, ln. 17-19. Moreover, as discussed above, Figures 5-8 illustrate that a computer connection is not required for the ATA to auto configure to use an internet access connection. In fact, it is specifically outlined in the text of the specification. *See* '722 Patent, col. 4, ln. 62-66 ("This allows the ATA **41** to access the Internet through the modem **43** without a computer connection. The ATA **41** is able to utilize a direct connection to the Internet through the ATA's **41** NIC component, which is similar to the NIC component found in computers."); s*ee also id.* at col. 5, ln. 4-6 ("Referring now to FIG. **7**, the VoIP system that does not require a computer is shown . . ."); s*ee also id.* at col. 5, ln. 26-28 ("Referring now to FIG. **8**, the VoIP system that does not require a computer is shown . . .").

In addition, this construction correlates with the proper definition of "plug-in-play" as described above. Because the clear, uncontroverted language of the specification proves the proper interpretation of this claim, Plaintiff's construction should be applied.

      H.    **"The ATA auto configures to operate using the user selected internet connection" means "the ATA automatically configures to use the user-selected connection without requiring additional configuration by the user".**

The text of this term is nearly identical to the terms discussed in Section G above, so the same arguments apply and Plaintiff incorporates them herein. In addition, the specification specifically references the Plaintiff's proposed construction. *See* '722 Patent, col. 3, ln. 17-19 ("The telephone functionality is auto configured and the ATA will take the user configuration from the network."). Thus the proposed construction for these terms is expressly supported by the specification, and it dovetails smoothly and consistently with the proposed construction of the terms in Section G and this Court should adopt Plaintiff's proposed interpretation.

      I.    **"Multi-port plug-in-play approach" means "the ATA can be connected to the Internet either directly or indirectly, with the ability to use several means of connecting to establish telephone communications, the ATA automatically configuring itself to use a selected connection without requiring additional configuration by the user".**

As discussed above, these terms are construed in a manner consistent with the construction of the term plug-in-play. In addition, the specification includes specific reference to the multi-port aspect of the plug-in-play approach of the claimed invention:

> The system itself is plug-in-play and may have a CD that will help to install the drivers on the computer connected to the Internet. *The multi-port functional approach is also plug-in-play.* The telephone functionality is auto configured and the ATA will take the user configuration from the network. The user sets the user account from a web page. The ATA can be identified by its MAC address and/or a serial number that can be electronically webbed.

> It is an object of this invention to provide a VoIP analog telephone system that can be connected to the Internet either directly or indirectly, with the ability to use several means of connecting to establish telephone communications.

'722 Patent at col. 3, ln. 15-26 (emphasis added).

Plaintiffs' proposed construction is consistent with the use of the terms in the specification, and should therefore be used in construing the claims. Moreover, this construction is consistent and harmonious with the proposed constructions set forth hereinabove. Indeed, the term "multi-port plug-in-play approach" encompasses the other terms set forth hereinabove and Plaintiff therefore adopts the arguments above in this section as well. The Court should adopt Plaintiff's proposed construction as it is supported by the intrinsic evidence, by the arguments set forth above, and is consistent with the overall claim language and other proposed constructions.

### J. "The ATA automatically detects a type of internet connection selected by the user, which connection is automatically detected without a computer connection" does not need to be construed.

Plaintiff believes that this term is self-evident and does not need to be construed. Given the term has a definite meaning for those skilled in the art at the time the patent was filed, there is no need to further construe the terms. *See* Declaration of Frank Koperda.

### K. "Said modem" means "a modem, router, modem/router combination, and/or a switch".

This exact definition appears verbatim in multiple locations in the original specification. *See* '722 Patent at col. 4, ln. 41-42; and col. 4, ln. 59-60. The inventor is empowered to define terms in the specification, and in this case the inventors have availed of that power clearly and concisely. Therefore, the Court should adopt Plaintiff's proposed construction.

### III. CONCLUSION

For at least the reasons set forth above, the Court should adopt Plaintiffs' proposed constructions for the disputed claim terms of the '722 patent.

WHEREFORE, Plaintiff requests this Court enter an Order adopting its proposed claim construction, and for such other and further relief as this Court deems appropriate.

Dated: June ___24___, 2014

SHUTTS & BOWEN LLP
*Counsel for Plaintiff*
*netTalk.com, Inc.*
1100 CityPlace Tower
525 Okeechobee Boulevard
West Palm Beach, FL 33401
Telephone: (561) 835-8500
Facsimile: (561) 650-8530


By: /s/ Daniel J. Barsky
Eric C. Christu
echristu@shutts.com
Florida Bar No. 434647
Joseph R. Englander
jenglander@shutts.com
Florida Bar No. 935565
Daniel J. Barsky
dbarsky@shutts.com
Florida Bar No. 25713

**CERTIFICATE OF SERVICE**

        I hereby certify that on June __24__, 2014, I electronically filed the foregoing document with the Clerk of the Court via CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

Janet T. Munn, Esq.
**Rasco Klock Reininger Perez**
**Esquenazi Vigil & Nieto**
*Counsel for Defendants*
283 Catalonia Avenue
Suite 200
Coral Gables, Florida 33134
305-476-7101 (ph)/305-476-7102(fax)
jmunn@rascoklock.com

Darryl M. Woo, Esq. (*pro hac vice*)
Virginia K. DeMarchi, Esq. (*pro hac vice*)
Saina S. Shamilov, Esq. (*pro hac vice*)
Elizabeth J. White, Esq. (*pro hac vice*)
Justin G. Hulse, Esq. (*pro hac vice*)
**Fenwick & West LLP**
*Counsel for Defendants*
555 California Street
12th Floor
San Francisco, California 94104
415-875-2300 (ph)/415-281-1350 (fax)

                                                             __/s/ Daniel J. Barsky_____
                                                             Daniel J. Barsky