UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case Number: 12- 81022-CIV-GAYLES/TURNOFF

NETTALK.COM, INC., a Florida
corporation,

 Plaintiff,

vs.

MAGICJACK VOCALTEC LTD., an
Israel limited partnership; MAGICJACK
LP, a Delaware limited partnership;
MAGICJACK HOLDINGS
CORPORATION f/k/a YMAX
HOLDINGS CORPORATION, a Delaware
corporation; and DANIEL BORISLOW, an
individual and citizen of the State of
Florida,

 Defendants.
_____/

## ORDER ON CLAIMS CONSTRUCTION

THIS CAUSE came before the Court on Plaintiff's Opening Claim Construction Brief [ECF No. 67], Defendants' Opposition to Plaintiff's Opening Claim Construction Brief [ECF No. 71], and following an evidentiary Markman hearing held on Friday, August 29, 2014.

## BACKGROUND

This action involves a patent dispute over devices utilizing Voice over Internet Protocol "(VoIP)" technology. VoIP is an alternative to traditional landline-based telephone service that allows people to make telephone calls over computer networks such as the Internet. To use VoIP, a consumer must connect to the Internet through a computer, a specialized home telephone, a cellular phone based application or a device

designed to connect traditional landline-based telephones to the internet. Plaintiff, Net Talk.com, ("Plaintiff") and Defendants magicJack Vocaltec Ltd. ("magicJack"), Magicjack LP ("MJLP"), Magicjack Holdings Corporation ("MJ Holdings") and Daniel Borislow (collectively "Defendants") both created devices to facilitate VoIP. The purported similarities between these devices form the dispute in this action.

Plaintiff filed its Complaint on September 21, 2012, against Defendants asserting infringement of U.S. Patent No. 8,243,722 B2 (the "722 B2 Patent"). Shortly thereafter, the Court stayed the case pending the outcome of a then-pending *ex parte* reexamination of the '722 B2 Patent's claims by the United States Patent and Trademark Office ("USPTO"). Upon reexamination, the USPTO rejected the '722 B2 Patent's claims, but allowed the Patent to reissue as amended. On February 27, 2014, the USPTO issued the reexamination certificate, with the reissued Patent now listed as U.S. Patent No. 8,243,722 C1 (the "722 Patent").

On February 5, 2014, the Court reopened the case, and Plaintiff filed an Amended Complaint (DE 48). Plaintiff alleges that Defendants infringe the '722 Patent by designing, making, or causing to be made, offering to sell, and selling products that embody and/or practice at least one of the claims of the '722 Patent, and that have no substantial non-infringing use.

On June 24, 2014, Plaintiff filed its Opening Claim Construction Brief setting forth disputed terms and language in the '722 Patent and asking the Court to construe those terms. [ECF No. 67]. On July 8, 2014, Defendants filed their opposition brief. [ECF No. 71]. After a reply and sur-reply, the Court held a Markman hearing on August 29, 2015, wherein the parties each presented a tutorial of VoIP technology and argument

as to the disputed claim terms. By the time of the Markman hearing, the following claims were in dispute:

1) Whether the language of the preamble limits the scope of the claims;
2) "Plug-in-play functionality;"
3) "Multiple separate and independent internet access connections;"
4) "the ATA to auto configure to use an internet access connection without a computer connection;"
5) "Multi-port plug-in-play approach;"
6) "the ATA automatically detects a type of internet connection selected by the user, which connection is automatically detected without a computer connection;"
7) "Said modem;" and
8) "Memory source"

The parties agreed to the following claim constructions previously in dispute:

a) "the ATA auto configures to operate using the user selected internet connection" to mean "the ATA automatically configures to use the user-selected connection without requiring additional configuration by the user;"
b) "the ATA to auto configure to operate using an independent internet access connection selected by the user;" to mean "the ATA automatically configures to use the connection selected by the user and can be used without requiring additional configuration by the user;"
c) The ATA to auto configure to use an internet access connection selected by the user" to mean "the ATA automatically configures to use the connection

3

      selected by the user and can be used without requiring additional configuration by the user;" and

d) "non-transitory storage medium" to mean "a storage medium that is enduring, long-lived, or not temporary."

## CLAIM CONSTRUCTION PRINCIPLES

The determination of patent infringement is a two-step process. First, the Court determines the scope and meaning of the claims as a matter of law. *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 387 (1996). Second, the construed claims are compared to the accused device. *Id.* "Claim construction is a legal statement of the scope of the patent right; it does not turn of witness credibility, but on the content of the patent documents." *Lighting Ballast Control LLC v. Philips Electronics North America Corp.*, 744 F.3d 1272, 1284 (Fed. Cir. 2014)(en banc).

"[T]he role of a district court in construing claims is . . . to give meaning to the limitations actually contained in the claims, informed by the written description, the prosecution history if in evidence, and any relevant extrinsic evidence." *American Piledriving Equipment, Inc. v. Geoquip, Inc.,* 637 F.3d 1324, 1331 (Fed.Cir. 2011). "Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement." *U.S. Surgical Corp. v. Ethicon, Inc.,* 103 F.3d 1554, 1568 (Fed.Cir. 1997). A court only needs to construe claim terms "to the extent necessary to resolve the controversy." *Wellman, Inc. v. Eastman Chemical Co.,* 642 F.3d 1355, 1361 (Fed.Cir. 2011) (citing *Vivid Technologies, Inc. v. American Science & Engineering, Inc.,* 200 F.3d 795, 803 (Fed.Cir. 1999).

In patent cases, "the words of a claim are generally given their ordinary and customary meaning." *Phillips v. AWH Corp.,* 415 F.3d 1303, 1312 (Fed.Cir. 2005) (en banc) (internal quotation marks omitted). To determine the meaning of a claim term, "the court looks to those sources available to the public that show what a person of ordinary skill in the art would have understood disputed claim language to mean.'" *Id.* at 1314 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys.,* 381 F.3d 1111, 1116 (Fed.Cir. 2004)). Such "sources include 'the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art.'" *Id.* When interpreting any asserted claim, "court[s] should look first to the intrinsic evidence of record," which encompasses "the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Vitronics v. Conceptronic, Inc.,* 90 F.3d 1576, 1583 (Fed.Cir. 1996)(citing *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed.Cir. 1995)). Following this analysis of the intrinsic evidence, extrinsic evidence may be considered only if necessary to determine the "'meaning or scope of technical terms in the claims.'" *See id.* (quoting *Hormone Research Found., Inc. v. Genentech, Inc.,* 904 F.2d 1558, 1562 (Fed.Cir. 1990)).

"In most situations, an analysis of the intrinsic evidence[, including the claims themselves, the remainder of the specification, and the prosecution history,] [ ] will resolve any ambiguity in a disputed claim term." *Vitronics,* 90 F.3d at 1583. However, there may be "instances in which intrinsic evidence is insufficient to enable the court to determine the meaning of the asserted claims, and in those instances, extrinsic evidence... may also properly be relied on to understand the technology and to construe the claims."

5

*Id.* at 1584 (citing *Markman,* 52 F.3d at 979). "Extrinsic evidence . . . may be helpful [to ascertain the meaning of a claim term] but is 'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *MBO Labs., Inc. v. Becton,* 474 F.3d 1323, 1329 (Fed.Cir. 2007)(*quoting Phillips,* 415 F.3d at 1317). Extrinsic evidence is very broad and includes dictionaries, reference books on the topic of the art, expert testimony, and "other material not part of the public record associated with the patent." *Id.* A court may only rely on extrinsic evidence when a claim term is ambiguous and intrinsic evidence does not resolve the ambiguity. *See  Intel Corp. v. VIA Techs., Inc.,* 319 F.3d 1357, 1367 (Fed.Cir. 2003) (emphasis in original) ("When an analysis of *intrinsic* evidence resolves any ambiguity in a disputed claim term, it is improper to rely on extrinsic evidence to contradict the meaning so ascertained.").

## CLAIMS AT ISSUE

### I.     Preamble

The preambles of claims 1 and 3 each recite "a Voice over Internet Protocol (VoIP) telephone system that enables VoIP telephony and facsimile services allowing a user to gain access to telephone connectivity between an analog handset telephone and the internet, said system having multiple separate and independent internet access connections for connecting to the internet, each separate internet connection selectable by the user."  Plaintiff asserts that the preambles of claims 1 and 3 do not limit the scope of claims 1 and 3.  Defendant disagrees and argues that to infringe claims 1 and 3, an accused device must meet the limitations of the preambles of the claims.

A preamble is only limiting "if it recites essential structure or steps, or if it is 'necessary to give life, meaning, and vitality' to the claim." *Symantec Corp. v. Computer*

*Assoc. Int'l, Inc.*, 522 F.3d 1279, 1288 (Fed.Cir. 2008)(*quoting Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 809 (Fed.Cir. 2002)).  A preamble might be limiting if the prosecution history reflects clear reliance on it or if it is necessary to provide antecedent basis for the body of the claim.  *Id.*  Otherwise, it is "generally is not limiting." *Id.*

The Court finds the preamble not limiting because (1) it does not recite essential steps or structures, and (2) it is not necessary to give life, meaning and vitality to the claim.  *See Symantec*, 522 F.3d at 1288.  Further, there is no evidence that the applicant relied on the preambles in the prosecution history to distinguish its inventions from the prior art.  *Id.*  Accordingly, the Court finds the preamble should not be used as a limitation of the scope of claims 1 and 3.

## II.    "Plug-in-Play Functionality"

The parties' proposed constructions for "plug-in-play functionality" are as follows:

| **Plaintiff**: automatically detecting the internet access connection selected by the user and automatically configuring itself so said connection is used by the ATA | **Defendants**: automatically detecting which internet networking interface is being selected by a user and automatically configuring itself so said networking interface is the ATA's connection to the internet used by the ATA for placing and receiving VoIP calls. |
|---|---|

In construing a patent, the Court must first rely on intrinsic evidence, including the prosecution history.  *See Vitronics*, 90 F.3d at 1583.  This includes definitions provided by the inventor.  *See, e.g., TecSec, Inc. v. IBM*, 731 F.3d 1336, 1345-46 (Fed.Cir. 2013)

The prosecution history of the '722 patent includes the sworn declaration of

7

Kenneth Hosfeld, an inventor of the '722 patent. In his declaration, Mr. Hosfeld expressly defined plug-in-play as

> [A]utomatically detects which networking interface is being selected by a user and automatically configures itself so said interface is its connection to the internet for placing and receiving VoIP calls.

*See* Ex. C to Defendant's Response. The Patent Office relied on this definition to allow the current claims. *See* Ex. G to Defendant Response at 1, 8-9. The Court relies on this intrinsic evidence to construe the claim. Mr. Hosfeld's definition is nearly identical to Defendants' proposed construction. Accordingly, the Court construes "plug-in-play functionality" using Defendants' proposed definition.

### III. "Multiple separate and independent internet access connections"

The parties' proposed constructions for "multiple separate and independent internet access connections are as follows:

| **Plaintiff**: the ATA can be connected to the Internet either directly or indirectly, with the ability to use several means of connective to establish telephone communications. | **Defendants**: multiple separate and independent internet access points in the housing of the ATA used by the ATA to place and receive VoIP calls. |
|---|---|

This term does not appear in the specification for the '722 patent. However, the prosecution history does provide some guidance. During reexamination of the '722 patent, Plaintiff submitted the declaration of Mr. Papadopulous, in which he testified why a different device -- prior art -- did not disclose the claimed invention:

> while there may be several types of connection used with the Fritz!Box, there is only one internet access point in the housing. Thus there are not 'multiple separate and independent internet access connections' as claimed in claims 1-3 of the '722 Patent . . . For example, the USB port in the Fritz!Box . . . it does not allow the Fritz!Box device to access the PC's internet connection to place a VoIP call, as is claimed in claims 1 and 3 of the '722 Patent.

8

Exhibit H to Defendants' Response.

The Court finds this intrinsic evidence convincing. Defendants' proposed construction closely comports with Mr. Papadopulous' definition. Therefore, the Court will construe "Multiple separate and independent internet access connections" using Defendants' proposed construction.

### IV. "the ATA to auto configure to use an internet access connection without a computer connection"

The parties' proposed constructions for "the ATA to auto configure to use an internet access connection without a computer connection" are as follows:

| **Plaintiff**: the ATA automatically configures to use the connection selected by the user without requiring additional configuration by the user and without the need for a computer connection. | **Defendants**: the ATA automatically configures to use the connection selected by the user without requiring additional configuration by the user and without the need for any external software. |
|---|---|

The specification states that "the telephone function is auto configured and the ATA will take the user configuration from the network." '722 Patent, Col. 3, ln. 17-19. In addition, Figures 5-8 of the specification illustrate that a computer connection is not required for the ATA to auto configure to use an internet access connection. *See also* '722 Patent, col. 4, ln. 62-66 ("This allows the ATA 41 to access the Internet through the modem 43 without a computer connection. The ATA 41 is able to utilize a direct connection to the Internet through the ATA's 41 NIC component, which is similar to the NIC component found in computers."). The Court finds Plaintiff's proposed construction comports with this language in the specification.

Defendants rely, in part, on an agenda item setting forth "issues to be discussed" in Plaintiff's request for an interview with the USPTO. Although that agenda item uses

some of Defendants' proposed language, the Court finds that it does not clearly define the claim. Accordingly, the Court will adopt Plaintiff's proposed construction for "the ATA to auto configure to use an internet access connection without a computer connection."

## V. "Multi-port plug-in-play approach"

The parties proposed constructions for "multi-port plug-in-play approach" are as follows:

| **Plaintiff**: the ATA can be connected to the Internet either directly or indirectly, with the ability to use several means of connecting to establish telephone communications, the ATA automatically configuring itself to use a selected connection without requiring additional configuration by the user. | **Defendants**: automatically detects which one from the ATA's multiple internet access points is being selected by a user and automatically configures itself so said access point is the ATA's connection to the internet used by the ATA for placing and receiving VoIP calls. |
|---|---|

As detailed in Section II, Defendants' proposed definition comports with the Mr. Hosfeld's definition for plug-in-play. Plaintiff's proposed definition attempts to incorporate its proposed definition of "multiple separate and independent access points" into its proposed definition of "multi-port plug-in-play." The Court, however, has already rejected Plaintiff's definition of "multiple separate independent access points." *See supra* Section III. Accordingly, the Court will adopt Defendants' proposed definition for "multi-port plug-in-play approach."

VI. **"the ATA automatically detects a type of internet connection selected by the user, which connection is automatically detected without a computer connection"**

The parties' proposed constructions are as follows:

| **Plaintiff**: Plaintiff does not believe any construction of this term is necessary. | **Defendants**: The ATA's processor automatically discovers which internet connection from the multiple separate and independent internet access connections was selected by the user without being connected to a computer. |
|---|---|

The Court finds that this term is clear and does not need construction.

VII. **"Said modem"**

The parties proposed constructions of "said modem" are as follows:

| **Plaintiff**: a modem, router, modem/router combination, and/or a switch | **Defendants**: "said modem" refers to "a modem" that appears in the reexamination certificate on line 66 of claim 1 and line 66 of claim 3; otherwise, the term is indefinite. |
|---|---|

The Court finds that Plaintiff's construction of "said modem" is too broad and that the Defendants' construction clarifies the term. However, the Court finds that the additional language "otherwise, the term is indefinite" is not necessary and only lends to confusion. Accordingly, the Court construes "said modem" as follows: "'a modem' that appears in the reexamination certificate on line 66 of claim 1 and line 66 of claim 3."

VIII. **"Memory Source"**

The parties' proposed constructions are as follows:

| **Plaintiff**: No construction necessary | **Defendants:** The term is indefinite |
|---|---|

The Court agrees with Plaintiff that no construction is necessary for the term "memory source." A patent is invalid for indefiniteness if "its claims, read in light of the

specification delineating the patent, and the prosecution hearing, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S.Ct. 2120, 2124 (2014). Having considered the testimony of both Plaintiff and Defendants' experts, the Court gives greater weight to the testimony of Plaintiff's expert, Frank Koperda, based on his greater expertise in the relevant field. Mr. Koperda opined that the term "memory source" is well known to those of ordinary skill in the art. As a result, the Court finds the term needs no construction.

Based on the foregoing, it is

**ORDERED AND ADJUDGED** that the claims are construed as follows:

1) The preambles of claims 1 and 3 are not limiting;

2) "Plug-in-Play Functionality" is construed as, "automatically detecting which internet networking interface is being selected by a user and automatically configuring itself so said networking interface is the ATA's connection to the internet used by the ATA for placing and receiving VoIP calls."

3) "Multiple separate and independent internet access connections" is construed as, "multiple separate and independent internet access points in the housing of the ATA by which the ATA makes an Internet connection and places and receives VoIP calls."

4) "the ATA to auto configure to use an internet access connection without a computer connection" is construed as, "the ATA automatically configures to use the connection selected by the user without requiring additional configuration by the user and without the need for a computer connection."

5) "Multi-port plug-in-play approach" is construed as, "automatically detects which one from the ATA's multiple internet access points is being selected by a user and automatically configures itself so said access point is the ATA's connection to the internet used by the ATA for placing and receiving VoIP calls."

6) "the ATA automatically detects a type of internet connection selected by the user, which connection is automatically detected without a computer connection" is clear and does not need construction.

7) "Said modem" is construed as, ""a modem' that appears in the reexamination certificate on line 66 of claim 1 and line 66 of claim 3."

8) "Memory Source" needs no construction.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 1st day of December, 2014.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE