UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-CV-81022-GAYLES/Turnoff

NET TALK.COM, INC.,

    Plaintiff,

vs.

MAGICJACK VOCALTEC LTD.,
MAGICJACK LP, MAGICJACK HOLDINGS
CORPORATION, and MICHELE BORISLOW,
personal representative of the Estate of Daniel
Borislow,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** came before the Court upon Defendants' Motion for Attorney's Fees Pursuant

to 35 U.S.C. § 285 (ECF No. 166), and Defendants' Bill of Costs (ECF No. 160). These matters were

referred to the undersigned by the Honorable Darrin P. Gayles, United States District Judge for the

Southern District of Florida. (ECF No. 162). A hearing on these matters was held on August 18,

2015. (ECF No. 178). The Court has reviewed the written and oral arguments, the record, the

applicable law, and is otherwise duly advised in the premises.

### Background

This patent infringement action involving Voice over Internet Protocol ("VoIP") technology,

was filed by Plaintiff NetTalk.com, Inc., against Defendants MagicJack Vocaltec Ltd., Magicjack

LP, Magicjack Holdings Corporation, and Daniel Borislow (collectively, "Defendants"), on

September 21, 2012, pursuant to the Patent Act, 35 U.S.C. §§ 101, *et seq*. (ECF No. 1). The original

Complaint alleged that, *inter alia*, Defendants infringed on U.S. Patent No. 8,243,722 ("the '722 B2 Patent"), which related to a VoIP communications system containing an analog telephone adapter ("ATA"), with two or more Internet access points, allowing "landline" phones to make calls over the Internet.

On December 17, 2012, the Court stayed the case pending the outcome of an *ex parte* re-examination of the '722 B2 Patent's claims by the United States Patent and Trademark Office ("USPTO") at Defendants' request.[1] (ECF No. 33, 36). Upon re-examination, the USPTO rejected the '722 B2 Patent's claims. (ECF No. 37). During re-examination, Plaintiff amended its patent claims to require not only "multiple separate and independent internet access connections," but also an "internet connection provided by the ATA." The USPTO allowed the Patent to re-issue as amended. (ECF No. 41). On February 27, 2014, the USPTO issued the re-examination certificate (ECF No. 46), with the reissued Patent now listed as U.S. Patent No. 8,243,722 C1 ("the '722 C1 Patent").

The case was reopened on February 5, 2014. (ECF No. 44). Plaintiff filed an amended Complaint on March 20, 2014, alleging that, *inter alia*, Defendants had infringed on the '722 C1 Patent by designing, making, or causing to be made, offering to sell, and selling products that embody and/or practice at least one of the claims of the '722 C1Patent, and that have no substantial non-infringing use. (ECF No. 48).

Defendant Borislow moved to dismiss the claims brought against him individually for failure to state a claim upon which relief could be granted. (ECF No. 52). The Court partially granted the

---

[1] "Any person at any time may file a request for reexamination by the Office of any claim of a patent on the basis of any prior art cited under the provisions of section 301 [Citation of prior art and written statements]." 35 U.S.C.A. § 302 (West).

motion dismissing the claims for direct and contributory infringement, but allowing the claims for induced infringement to remain. (ECF No. 68). Mr. Borislow passed away on July 21, 2014. (ECF No. 120).

On June 24, 2014, and July 8, 2014, respectively, the parties submitted briefs regarding claim construction setting forth disputed terms and language in the '722 C1 Patent and asking the Court to construe those terms. (ECF Nos. 67, 71). The Court held a Markman hearing on August 29, 2015. (ECF No. 67, 86, 98).

On October 22, 2014, Plaintiff moved for a 90-day stay pending establishment and representation of Mr. Borislow's estate. (ECF No. 102). On November 25, 2014, Plaintiff's counsel moved to withdraw. (ECF No. 126).

On December 1, 2014, Judge Gayles entered an Order on Claims Construction. (ECF No. 129). On December 12, 2014, the Court granted a stay until December 31, 2014, pending appearance of new counsel for Plaintiff. (ECF Nos. 139, 140). New counsel was substituted for Plaintiff on January 1, 2015. (ECF No. 141).

On February 26, 2015, Plaintiff moved to dismiss the case for lack of subject matter jurisdiction based upon a covenant not to sue. (ECF No. 154). The motion was granted on February 27, 2015. (ECF No. 158). A final judgment was entered on June 18, 2015. (ECF No. 172). The Court subsequently dismissed Plaintiff's claims with prejudice and Defendants' claims without prejudice, and reserved jurisdiction to determine attorney's fees and costs. Id. Defendants have moved for attorney's fees in accordance with 35 U.S.C. §285. (ECF No. 166).

## Legal Standard

The Patent Act provides that "[t]he court in exceptional cases may award reasonable attorney

fees to the prevailing party." 35 U.S.C. §285. Defendants argued that this case was exceptional, thus warranting a fee award. Given the recent changes in this area of the law, the following serves as the framework for the undersigned's analysis.

Until recently, the Federal Circuit adhered to the standard set forth in Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc., 393 F.3d 1378 (Fed. Cir. 2005), wherein a case was deemed "exceptional" if there had been some "material inappropriate conduct," or if the action had been both "objectively baseless" and "brought in subjective bad faith." Id. at 1381. Although the decision to award fees remained within the Court's discretion, it required the existence of both elements by clear and convincing evidence. Id.

In Octane Fitness, LLC v. ICON Health & Fitness, Inc., 134 S.Ct. 1749 (2014), the Supreme Court rejected the Brooks standard finding that this framework was unduly rigid and impermissibly encumbered the statutory grant of discretion to district courts. Id. at 1755-56. The Octane Fitness Court further found that this standard would render §285 "largely superfluous," because courts already had the inherent power to award fees for cases involving misconduct or bad faith. Id. at 1758. Moreover, the Supreme Court moved away from a standard of clear and convincing evidence to establish entitlement to fees. Id. Instead, the Court reasoned that patent-infringement litigation has always been governed by a preponderance of the evidence standard, because it allowed both parties to "share the risk of error in roughly equal fashion." Id. (citing Herman & MacLean v. Huddleston, 459 U.S. 375, 390 (1983)).

In construing §285, the Octane Fitness Court held that, since the Patent Act does not define it, "exceptional" should be defined in accordance with its ordinary meaning. Id. Thus, an exceptional case is "simply one that stands out from others with respect to the substantive strength of a party's

litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." Id. However, "[t]here is no precise rule or formula" guiding the determination of whether a case is exceptional. Id. at 1755-56 (citing Fogerty v. Fantasy. Inc., 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994)). Courts must engage in a "case-by-case exercise of their discretion, considering the totality of the circumstances." Id. at 1755-56 (citing Fogerty, 510 U.S. 517). Factors relevant to the inquiry include: "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." Octane Fitness, 134 S. Ct. at 1756, n. 6 (quoting Fogerty, 510 U.S. at 534, n. 19)).

As with any new ruling, courts are engaged in the initial stages of interpretation. Thus far, however, courts have been reluctant to award fees where a plaintiff has, "set forth some good faith argument in favor of its position." Small v. Implant Direct Mfg., LLC, No. 06-CIV-683 (NRB), 2014 WL 5463621, at *3 (S.D.N.Y. Oct.23, 2014); see also EON Corp. IP Holdings, LLC v. Cisco Sys., Inc., 12-CV-01011-JST, 2014 WL 3726170 (N.D. Cal. Jul. 25, 2014) (denying an award of attorney's fees where infringement contentions lacked merit, but the Court could not conclude that "no reasonable patentee could [find] an opening . . . through which the argument [albeit stretched] could be squeezed").

Courts have noted that, although the post-Octane Fitness fee inquiry is guided by a more lenient standard, an attorney's fee award is still the exception to the American Rule and should be reserved only for rare circumstances. BMW of N. Am., LLC v. Cuhadar, No. 6:14-CV-40-ORL-37DAB, 2014 WL 5420133, at *3 (M.D. Fla. July 10, 2014) (citing Intellect Wireless, Inc. v. Sharp Corp., No. 10-C-6763, 2014 WL 2443871, *5 (N.D. Ill. May 30, 2014)); see

Hi-Tech Pet Products. Inc. v. Shenzhen Jianfeng Electronic Pet, No. 6:14-cv-759-0rl-22TBS, 2015
WL 926023 (M.D. Fla. Mar. 4, 2015) (citing Intellect Wireless, Inc., 2014 WL 2443871, at *5).

Thus, the question before the Court is whether this case is "exceptional," such that
Defendants, as the prevailing party in this suit, are entitled to an award of attorney's fees pursuant
to § 285.

In this regard, the Court notes that, even if it were to determine that this case was exceptional,
Defendants would not be automatically entitled to an award of attorney's fees. See Icon Health &
Fitness, Inc. v. Octane Fitness, LLC, 576 F. App'x 1002, 1005 (Fed. Cir. 2014) ("The Supreme
Court's decision in Octane did not, however, revoke the discretion of a district court to deny fee
awards even in exceptional cases"). A determination as to the propriety of a fee award is a separate
discretionary inquiry. See 35 U.S.C. § 285 ("The court in exceptional cases may award reasonable
attorney fees to the prevailing party" (emphasis added)); RCI TM Corp. v. R & R Venture Group,
LLC, No. 6:13-cv-945-Orl-22, 2015 WL 668715, at * 11 (M.D. Fla. Feb. 17, 2015) ("Even if the trial
court finds that the circumstances of the case are, in fact, exceptional, the decision whether to award
attorney's fees is still discretionary"); Die ter v. B & H Industries of Southwest Florida Inc., 880 F.2d
322, 329 (11th Cir. 1989) (citing Jellibeans, Inc. v. Skating Clubs of Georgia, Inc., 716 F.2d 833, 846
(11th Cir. 1983) ("Even if the trial court finds that the circumstances of the case are, in fact,
exceptional, the decision whether to award attorney's fees is still discretionary")). "In determining
whether to award attorney's fees, courts consider the closeness of the case, the tactics of counsel, the
conduct of the parties, and any other factors that may contribute to a fair allocation of the burdens
of litigation as between winner and loser." See H-W Technology, Inc. v. Overstock.com, Inc., No.
3:12-CV-0636-G (BH), 2014 WL 4378750, at * (N.D. Tex. Sept. 3, 2014).

Against this backdrop, the undersigned makes the following findings and recommendations.

## Discussion

Defendants argued that this case was deserving of an exceptionality designation under § 285, because Plaintiff pursued baseless claims of infringement and damages and litigated the case in an unreasonable manner. (ECF No. 166).

## I. Plaintiff's Infringement Claims.

As noted *supra*, during re-examination, Plaintiff amended its patent claims to require "multiple separate and independent internet access connections," as well as an "internet connection provided by the ATA." Both of these amendments were the basis of Defendants' non-infringement arguments. One was subject to claim construction, while the other was not. Plaintiff focused its argument on the validity of the position dependent upon claim construction.

### A. Patent Claim Subject to Claim Construction.

The phrase, "multiple, separate and independent internet access connections," was the subject of claim construction. Defendants argued that this claim became objectively baseless as of December 1, 2014, when the Court issued its Claim Construction Order.

According to Defendants, the most fair reading of this claim was that the multiple, independent access points had to be inside the housing of the ATA. In reaching this conclusion, Defendants relied upon the sworn affidavit of Plaintiff's expert, Dr. Costas Papadopoulos, who stated that Plaintiff's patent claims were different from prior art[2] because the claims required "multiple, separate and independent internet connections to be in the housing of the ATA."

---

[2]Prior art is "technology already available to the public...knowledge that is available, including what would be obvious from it, at a given time, to a person of ordinary skill in the art." Kimberly-Clark Corp. v. Johnson & Johnson, 745 F.2d 1437 (Fed. Cir. 1984).

Contrary to Defendants' position, Plaintiff argued that the term referred to direct or indirect connections that were not limited to multiple, separate and independent internet access points in the housing of the ATA. According to Plaintiff, based upon the intrinsic record,[3] which was the drawings and the written matter or the specifications of the patent, as well as the prosecution history, there could be an indirect or direct connection, but there was no limitation on the face of the claims, and there was no support in the specification to read an inner limitation, that these access points be within, or inside, the housing of the ATA.

Moreover, Plaintiff rebutted Defendants' reliance on the Papadopoulus Affidavit arguing that Defendants were reading it too narrowly and out of context. To illustrate the ambiguity of Dr. Papadopoulus' statement in this regard, Plaintiff included an excerpt of the transcript from the Markman hearing wherein Judge Gayles questioned Defendants' interpretation of the affidavit. (ECF No. 167) at p. 155:5-22; 158:1-16; 159:22; 160:7. Judge Gayles noted that when Mr. Papadopolous made his statements about the internet connections being in the housing of the ATA, he was referring to another device of prior art. Id.

Defendants also relied upon the testimony of Plaintiff's Chief Technical Officer, Garry Paxinos. According to Defendants, Mr. Paxinos had defined "multiple separate and independent internet access connections" in a sworn statement before the USPTO in a way that precluded infringement. This argument was premised on Defendants' "in the housing" construction of the same claim term. Plaintiff argued that, because the Court did not construe this claim term as requiring "multiple separate and independent internet access points in the housing of the ATA" until its

---

[3]"[I]ntrinsic evidence of record . . . [is] the patent itself, including the claims, the specification and, if in evidence the prosecution history." Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996).

December 2014 Claim Construction Order, then Defendants could not demonstrate that Plaintiff's proposed construction, or related infringement contention, were objectively baseless or made in bad faith.

Plaintiff argued further that it had a good faith infringement claim that would have gone to trial even if, ultimately, it was unsuccessful. Moreover, Plaintiff argued that Defendants were attempting to elevate the fee request to the level of summary judgment on non-infringement.

The issue is whether Plaintiff's position was tenable and made in good faith, not whether it was ultimately successful. See SFA Sys., LLC v. Newegg Inc., 793 F.3d 1344, 1347-48 (Fed. Cir. 2015) (what matters is "substantive strength," "not the correctness or eventual success of that position" (emphasis in original)). The Court agrees that "for a case dismissed before trial to be designated exceptional, evidence of the frivolity of the claims must be reasonably clear without requiring a "mini-trial" on the merits for attorneys' fees purposes." Charge Lion LLC v. Linear Tech. Corp., No. 6:12-CV-00769 (E.D. Tex. Aug. 25, 2014); SFA Sys., LLC v. 1-800-Flowers.com, Inc., No. 6:11CV399 (E.D. Tex. July 8, 2014), at * 4-5, aff'd *sub nom*; SFA Sys., LLC v. Newegg Inc., 793 F.3d at 1348-49; Trover Group, Inc. v. Dedicated Micros USA, 2:13-CV-1047-WCB, 2015 WL 4910875, at * 3 (E.D. Tex. 2015).

## B. Patent Claim Not Subject to Claim Construction.

The asserted claim's requirement for an "internet connection provided by the ATA" was not the subject of claim construction. Mr. Paxinos had tested the device in 2012 and confirmed that it was a sound card, which meant that it did not have an "internet connection provided by the ATA." Defendants argued that, because Plaintiff had already analyzed the accused product when it added that limitation to the asserted claim during re-examination, it knew or should have known, without

having to wait for the Court to issue the Claim Construction Order, that there could be no infringement once the patent emerged from re-examination. Thus, Defendants argued that this claim was objectively baseless as of February 27, 2014, when the claim emerged from re-examination.

Defendants argued further that, from its inception, this case was objectively frivolous and should not have been filed. Plaintiff argued that, even assuming its claims were baseless, Defendants should have raised the issue of non-infringement when the case resumed after re-examination. However, Defendants did not move for summary judgment on the issue of infringement; they only attempted to do so on the issue of damages.

## 2. Damages Claims.

Claiming that Defendants violated its provisional rights in the patent, Plaintiff sought $200 million in damages from June 4, 2009, the date on which Plaintiff filed the provisional patent application.

Entitlement to damages before re-examination requires Plaintiff to show that the original claims and the re-examined claims were substantially identical. Laitram Corp. v. NEC Corp., 163 F.3d 13423, 1346 (Fed. Cir. 1998). "If substantive changes have been made to the original claims, the patentee is entitled to infringement damages only for the period following the issuance of the reexamination certificate." Id. Thus, Plaintiff must prove that the claims were substantially identical from 2009 through 2014, when the patent emerged from re-examination. If there were any changes to the claims, then Plaintiff could only seek damages from re-examination onward.

Plaintiff argued that the re-examined claims were not substantively changed from the original claims. Plaintiff argued further that claim construction, which Order did not issue until December 1, 2014, bore on the issue of provisional rights.

In opposition, Defendants argued that Plaintiff was not entitled to damages since 2009, because the original claims and the re-examined claims were not identical. Plaintiff added over 100 words to the re-examined claim, including limitations that arguably established Defendants' non-infringement positions. In fact, Defendants unsuccessfully sought leave to file a summary judgment motion as to damages. (ECF No. 79). Moreover, Defendants argued that, even if claim construction bore on provisional rights, it was meaningless in this case because the published application and the issued patent were not substantially identical.

Defendants further argued that Plaintiff's claim against the estate of Borislow made the case exceptional because of the egregious effect it had on the estate and the family. Plaintiff maintained its $200 million claim against Mr. Borislow's estate even after he had ceased to be a part of the company. Moreover, the claim prevented his widow from making any distributions of the estate to any family or creditors.

Rather than addressing the merits of the damages claim, Plaintiff's argument focused on its conduct in attempting to resolve the case following the issuance of the claim construction order. Plaintiff argued that, almost immediately after retaining new counsel and evaluating the Court's claim construction order, Plaintiff began discussing entry of judgment of non-infringement in favor of Defendants, a stay of the proceedings to conserve resources pending an appeal to the Federal Circuit, and, shortly thereafter, a covenant against suit in favor of Defendants and dismissal of the entire case.

## Analysis

Based upon these facts, the Court is not persuaded that this case deserves an exceptionality designation. Although Octane Fitness loosened the framework for assessing exceptionality, it

remains the exception to the rule. See Small, 2014 WL 5463621, at *3 (noting that, even after Octane Fitness, "courts continue to hold claims of baselessness to a high bar").

A court will generally not find a party with a good-faith argument in favor of its position to have made "exceptionally meritless" claims. See Small, 2014 WL 5463621, at *3; see also EON Corp. IP Holdings LLC, 2014 WL 3726170, at *5 (even when the plaintiff's argument was "quite stretched" and its conduct "difficult to explain," the court could not "quite conclude that no reasonable patentee could see an opening . . . through which the argument could be squeezed"); Gametek LLC v. Zynga, Inc., No. CV 13-2546 RS, 2014 WL 4351414, at *3 (N.D. Cal. Sept. 2, 2014) (while plaintiff's briefing, which "consisted of granular parsing of the claimed steps rather than any substantive explanation of how [the invention] differed from the underlying abstract idea," was inadequate, it "did not . . . descend to the level of frivolous argument or objective unreasonableness").

"Since Octane [Fitness], district courts have awarded fees when the patentee had a history of bringing nuisance value cases, was motivated by a bad faith desire to bankrupt the alleged infringer with litigation costs, resisted discovery requests, made no reasonable effort to verify the defendant's products infringed, engaged in inequitable conduct at the PTO, or made misrepresentations during the litigation." RLIS, Inc. v. Cerner Corp., No. 3:12-CV-209, 2015 WL 5178072, at * (S.D. Tex. Sept. 3, 2015); See Gametek, LLC, 2014 WL 4351414, at *3 (showing that a case is exceptional when it concerns egregious behavior). "[M]ost cases awarding fees continue to involve substantial litigation misconduct." Small, 2014 WL 5463621, at *3.

The infringement claims advanced by Plaintiff in this case were not so baseless as to support a fee award. See Old Reliable Wholesale, Inc. v. Cornell Corp., 635 F.3d 539, 544 (Fed. Cir. 2011)

(internal quotations omitted) ("Unless an argument or claim asserted in the course of litigation is so unreasonable that no reasonable litigant could believe it would succeed, it cannot be deemed objectively baseless for purposes of awarding attorney fees." Id. (internal quotations omitted)).

Plaintiff set forth a good faith argument with respect to the interpretation of the phrase, "multiple separate and independent internet access connections." See Small, 2014 WL 5463621, at *3 ("[If] a party has set forth some good faith argument in favor of its position, it will generally not be found to have advanced 'exceptionally meritless' claims"). Its claim construction argument falls into the category of a dispute over claim meaning that, while unlikely to prevail, was nonetheless legitimate to submit to the Court for resolution. The Court does not regard Plaintiff's interpretation as being so unreasonable as to make this an exceptional case. Such push-and-pull over the scope of claim language is common in patent litigation. In fact, that Plaintiff ultimately lost on its claim construction position, standing alone, is insufficient to support a finding of exceptionality within the context of § 285. See SFA Sys., LLC v. Newegg, Inc., 793 F.3d at 1348 (the "correctness or eventual success" of a party's litigation position is not determinative of the attorney fee issue; "[a] party's position on issues of law ultimately need not be correct for them not to 'stand[ ] out,' or be found reasonable" (alteration in original)); See H-W Technology, Inc., 2014 WL 4378750, at *4 ("Plaintiff may have asserted a losing argument but this does not amount to the type of extraordinary misconduct reserved for finding a case exceptional"); Calypso Wireless, Inc. v. T–Mobile USA Inc., No. 2:08-CV-441, 2015 WL 1022745, at *5 (E.D. Tex. Mar. 5, 2015) ("[T]he Court does not consider a case 'exceptional' simply because there is dispute over the construction of patent claims and that a defendant or plaintiff's construction proved to be incorrect–there must be more."); Bianco v. Globus Medical, Inc., No. 2:12-CV-00147, 2014 WL 1904646, at *2 (E.D. Tex. Apr. 17, 2014)

(the fact that the Court ruled against the plaintiff on an issue does not mean that the defendant has shown that the plaintiff's position was frivolous). Indeed, an award of fees is not "a penalty for failure to win a patent infringement suit." Octane Fitness, 134 S.Ct. at 1753 (quoting Park-In-Theatres, Inc. v. Perkins, 190 F.2d 137, 142 (9th Cir. 1951)); see Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prods., Inc., 790 F.3d 1369, 1373 (Fed. Cir. 2015) ("fees are not awarded solely because one party's position did not prevail").

With respect to the claim element not requiring claim construction, the Court agrees that Plaintiff's argument in this regard was weak and, possibly, meritless. Standing alone, however, it is insufficient to render this case extraordinary. See EON Corp. IP Holdings, LLC, 2014 WL 3726170, at *5 ("the Court agrees that EON's infringement contentions lack merit. But that by itself is not enough to render a case 'extraordinary').

Furthermore, as recently noted by the undersigned,

It is also important to note that no Rule 11 Motion was ever filed in this case. Here, Quintron insists that this case was objectionably frivolous from its inception and should never have been filed. Well, Rule 11 is the remedy for that.

Commonwealth Laboratories, Inc. v. Quintron Instrument Company, Inc., Case No. 1:14-cv-20083-PAS, Report and Recommendation dated 07/20/2015 (ECF No. 98). Yet, in this case, as in the one cited, Defendants never sought relief under any applicable rule.

After considering the totality of the circumstances, the undersigned cannot conclude that Defendants have met their burden of establishing that this case is "extraordinary" to warrant fee-shifting under the Patent Act. Therefore, in its discretion, the undersigned **RECOMMENDS** that the Court decline to award attorney's fees to Defendants under 35 U.S.C. § 285.

### 3.    Manner of Litigation.

Lastly, Defendants argued that Plaintiff's conduct in this case also warranted an exceptionality designation. In support, Defendants pointed to various discovery issues regarding depositions, expert reports, and production, but cited no cases finding similar conduct to be exceptional.

Plaintiff argued that, at the time the Court issued its Order on Claim Construction, on December 1, 2014, it did not have counsel. New counsel made an appearance on Plaintiff's behalf on January 1, 2015. A few days later, Plaintiff began working toward resolution of the case. The Court then granted Plaintiff a thirty-day extension due to counsel's spine surgery scheduled for January 28, 2015. Plaintiff argued that it was not unreasonable to wait until the new year to retain new counsel to review the Claim Construction Order for viability of claims. Defendants argued that, notwithstanding new counsel's efforts, Plaintiff's prior counsel had already maintained, for over two years, a lawsuit it knew, or should have known, was baseless.

The undersigned finds that, although the conduct of Plaintiff and Plaintiff's counsel in this litigation, at times, may have been less than desirable, it was not so unreasonable as to warrant a finding of exceptionality. Even if Plaintiff failed to prosecute the case as efficiently as possible, there was no evidence of egregious conduct justifying a fee award. See Adaptix, Inc. v. Apple, Inc., 2015 WL 5158716, at *2 (N.D. Cal. Sept. 2, 2015) ("While there can be no question that at times this case was not prosecuted as efficiently as possible, the court is not persuaded that any exceptional circumstances arose justifying an award of attorney's fees"). Assuming Plaintiff may have been guilty of failing to timely respond to discovery requests, there was no evidence that the delays caused any actual prejudice to Defendants' rights. In fact, contrary to Defendants' arguments concerning

Plaintiff's failure to comply with Court-ordered discovery, the Court's deadline for the completion of discovery was March 2, 2015; however, this case was dismissed before that deadline, on February 27, 2015. Moreover, the Court notes that Defendants did not seek sanctions for the alleged discovery violations. Indeed, as Plaintiff argued, during the course of this entire litigation, no party was sanctioned for discovery abuses or otherwise.

In evaluating the totality of the circumstances and in view of the absence of Eleventh Circuit authority interpreting Octane Fitness, the Court finds an award of fees for an "exceptional" case under § 285 of the Patent Act to be inappropriate here, and, therefore, respectfully **RECOMMENDS** that Defendants' request for an award of fees under § 285 be **DENIED**.

At the hearing, Plaintiff argued, for the first time, that a $2 million sanction would put it out of business. Because the undersigned finds that this case does not warrant a fee award under § 285, any consideration of Plaintiff's financial circumstances is deemed moot.

## Defendants' Bill of Costs (ECF No. 160)

Defendants indisputably became the prevailing party following Plaintiff's covenant not to sue and the Court's Rule 41(a)(2) dismissal with prejudice. Am. Tech. Inc. v. Am. Future Tech. Corp., No. 6:11-CV-113-ORL-22, 2012 WL 859345, at *1 (M.D. Fla. Mar. 14, 2012). As the prevailing party, Defendants sought to recover costs in the total amount of $39,719.27, as follows: (1) $695.00 in fees for the service of summons and subpoenas; (2) $15,901.11 in fees for printed or electronically recorded transcripts; (3) $139.50 in fees and disbursements for printing; and (4) $22,983.66 in fees for exemplification and copies. Plaintiff agreed that Defendants were entitled to recover costs in the amount of $6,664.35, but objected to the remaining costs of $33,054.92.

**(1) Fees for service of summons/subpoenas.** Defendants sought to recover the cost of

Page 16 of 25

subpoenas served on several third parties. Currently, the U.S. Marshal charges $65.00 per hour to serve a subpoena. 28 C.F.R. § 0.114(a)(3). Plaintiff agreed that Defendants were entitled to recover $185.00 in costs for the service of subpoenas on  Leo Manzewitsch, Costas Papadopoulos, and Alex Hewko, but objected to the remaining $510.00 in costs for service of document subpoenas.

The undersigned finds that the costs incurred in serving document subpoenas are recoverable. See Burke-Thompson v. Baptist Health S. Florida, Inc., 06-20766-CIV, 2008 WL 4791018, at *3 (S.D. Fla. Nov. 3, 2008) (allowing recovery of costs of service of process fees for subpoenas served for documents and/or for attendance at depositions); Spatz v. Microtel Inns & Suites Franchising, Inc., 11-60509-CIV, 2012 WL 1587663, at *2 (S.D. Fla. May 4, 2012) (allowing recovery of costs for service of two document-production subpoenas by private process servers). Thus, the undersigned **RECOMMENDS** that Defendants recover the full amount of $695.00 in fees for service of subpoenas.

**(2) Fees for printed or electronically recorded transcripts**. Defendants sought to recover costs in the total amount of $15,901.11 for the transcripts of four hearings and five depositions.

**A. Pre-trial Hearings.** The pre-trial hearing transcripts totaled $1,381.26, as follows: (1) July 25, 2014 Status Conference; (2) September 10, 2014 Markman Hearing; (3) December 11, 2014 Motion Hearing; and (4) January 28, 2015 Status/Scheduling Conference.

Defendants argued that the July 25, 2014 and December 11, 2014 hearings contained rulings that were not memorialized in a court order. At the July 25, 2014 hearing, Plaintiff stipulated that it was only pursuing claim 3, and the Court ruled that Plaintiff must show good cause to later assert another claim. At the hearing on December 11, 2014, the Court instructed Defendants not to file a motion to compel until new counsel appeared for Plaintiff, which motion would not be deemed

untimely. With respect to the Markman hearing, Defendants argued that its importance was on par with a trial, as it was an evidentiary proceeding including substantial opposing expert testimony. With respect to the January 28, 2015 hearing, Plaintiff admitted that it could not prevail. Plaintiff argued that the transcript was not necessary because it had admitted that it could not prevail during settlement discussions. Finally, Plaintiff argued that Defendants did not establish why the transcripts were ordered on an expedited basis.

"Hearing transcript costs are taxable when reasonably obtained 'in preparation for additional argument and/or motion practice.'" Luka v. City of Orlando, No. 6:07-cv-841-ORL-22GJK, 2011 WL 4837263, at *7 (M.D. Fla. Sept. 23, 2011) report and recommendation adopted, 2011 WL 4836229 (M.D. Fla. Oct. 12, 2011) (quoting U.S. Fire Ins. Co. v. Mikes, No. 8:04-cv-2783-T-23TBM, 2008 WL 61602, at *3 (M.D. Fla. Mar. 3, 2008)).

The undersigned agrees that Defendants are entitled to recover the costs of the hearing transcripts. However, in the absence of evidence that it was necessary to expedite the transcripts for these hearings, the Court finds that those costs should not be allowed. Rodriguez v. Marble Care Intern., Inc., 862 F.Supp.2d 1316, 1320 (S.D. Fla. Feb. 8, 2012); Licausi v. Symantec Corp., No. 08-60544-CIV, 2009 WL 3177566, at *3 (S.D. Fla. Sept. 29, 2009) ("[F]ees for expedited or condensed transcripts, compressed and miniscript versions, and CD ROM's with ASCII are not reimbursable under § 1920").

Therefore, the undersigned **RECOMMENDS** that Defendants be awarded $1,057.26 in costs for the hearing transcripts, which is calculated at the ordinary rate of $4.02 per page.

**B. Depositions.** Plaintiff did not object to the recovery of the cost of the deposition transcripts for: (1) inventor Leo Manzewitsch; (2) expert witness Frank Koperda; (3) expert witness

Page 18 of 25

John Garney; (4) NetTalk executive Nick Kyriakides; and (5) inventor Garry Paxinos. As such, the undersigned **RECOMMENDS** that Defendants recover the amount of $6,014.35 in deposition transcripts.

In addition, Defendants sought to recover various other costs associated with the depositions as follows:

**1. Rough Transcript.** Defendants sought to recover the cost of the rough transcripts for Koperda's deposition who was deposed the day before the Markman hearing. Plaintiff did not object. Thus, the undersigned **RECOMMENDS** that Defendants recover the cost of the rough transcript in the amount of $325.50.

**2. Court Reporter Attendance Fee.** Defendants also requested taxation of the court reporter's attendance fee for each deposition, totaling $1,620.00. Plaintiff objected citing a case from this District wherein such costs were denied. However, the undersigned notes that numerous courts, including this one, have ruled that attendance fees of court reporters are taxable costs, because it is necessary for the court reporter to appear, record the testimony, and then prepare the deposition transcript. See Rodriguez v. M.I. Quality Lawn Maint., Inc., No. 10-21031-CIV, 2012 WL 664275, at *4 (S.D. Fla. Feb. 9, 2012) (collecting cases). This Court agrees that the appearance fees of the court reporters are directly related to transcript preparation. Accordingly, the undersigned **RECOMMENDS** that the court reporter appearance fees in the amount of $1,620.00 be taxed as costs.

**3. Videotaped Depositions.** Defendants sought to recover costs, totaling $6,560.00, for the videos of all five depositions, as well as costs ancillary thereto, such as fees for the time of the videographer. All of the depositions were noticed to be recorded by both stenographic

and non-stenographic means. There is no claim that Plaintiff objected to the format of these depositions at the time they were taken.

The costs of a video deposition may be allowed when a party notices a deposition to be recorded by both stenographic and non-stenographic means, no objection is raised by the other party at that time to the method of recordation, and copies of the videos were necessarily obtained for use in the case. Morrison v. Reichhold Chems., Inc., 97 F.3d 460, 465 (11th Cir. 1996); J.G. v. Carnival Corp., 12-21089-CIV, 2013 WL 5446412, at *3 (S.D. Fla. Sept. 28, 2013). The prevailing party must explain why it was necessary to obtain both a transcript and a videotaped recording of a deposition. Castillo v. Roche Laboratories, Inc., No. 10-20876-CV, 2012 WL 381200, at * 3 (S.D. Fla. Feb. 6, 2012); Scottsdale Ins. Co. v. Wave Technologies Communications, Inc., No. 8:07-cv-1329-T-30MAP, 2012 WL 750317, at * 2 (M.D. Fla. Mar. 7, 2012).

Defendants argued that there was no guarantee that the witnesses would be within the subpoena power of the court at the time of trial, and that Plaintiff had chosen to videotape the deposition of its own expert as well. All but one of the witnesses were either third-party witnesses or witnesses within Plaintiff's control. Though Garney was Defendants' expert witness, they could not be sure that he would be available for trial. Plaintiff objected arguing that not knowing whether the witnesses would be available for trial was insufficient to support this expenditure because these witnesses could be subpoenaed pursuant to Rule 45.

Defendants have not shown that both methods of recording were necessary. Accordingly, Defendants may recover the costs of the stenographic transcripts but are not entitled to the disputed videotaping costs of the same witnesses. DuChateau v. Camp Dresser & McKee, Inc., No. 10-60712-CIV, 2012 WL 1069166, at *3 (S.D. Fla. Mar. 29, 2012); D.B. v. Orange County, Fla., No. 6:13-cv-

434-Orl-31DAB, 2015 WL 847293, at *2-3 (M.D. Fla. Feb. 26, 2015). Thus, the undersigned **RECOMMENDS** that the cost of the video depositions not be taxed against Plaintiff.

**(3) Fees and disbursements for printing.** Plaintiff did not object to Defendants' request for printing fees. As such, the undersigned **RECOMMENDS** that Defendants recover $139.50 in printing fees.

**(4) Fees for exemplification and copies.** Defendants sought to recover $13,005.39 for photocopies, and $9,978.27 for time spent in preparing documents for production. Plaintiff objected to both of these costs. Upon review of the materials, the Court concludes that only a portion of copying was sufficiently supported as reasonably necessary.

Plaintiff argued that Defendants had not shown that the copies were necessarily obtained for use in the case as they did not show the nature of the copied documents or how they were used in the case. Moreover, Defendants provided no supporting affidavit that the copies were actually used at any depositions.

It is well-established that the movant must provide information regarding the purpose of the copies and whether they related to the claims at issue. See Helms v. Wal-Mart Stores, Inc., 808 F. Supp. 1568, 1570 (N.D. Ga. 1992), aff'd, 998 F.2d 1023 (11th Cir. 1993); see also Lee v. American Eagle Airlines, Inc., 93 F.Supp.2d 1322, 1335-36 (S.D. Fla. 2000) (declining to tax photocopy costs lacking description).

Defendants argued that it was apparent from the date of the copies that the majority were effected for purposes of depositions occurring in August 2014, November 2014, or February 2015. While the attached invoices roughly correspond to those dates, almost no details were provided regarding the purpose of each copy order or the general content of the documents. Absent such

information, the Court cannot evaluate whether the requested copying charges were necessary and reasonable. See Brooks v. Peer Review Mediation and Arbitration, Inc., No. 11-61630-CIV, 2012 WL 5410405, at *5 (S.D. Fla. Nov. 6, 2012); see also Monelus v. Tocodrian, Inc., 609 F.Supp.2d 1328, 1335 (S.D. Fla. 2009) (explaining that the prevailing party "cannot simply make unsubstantiated claims that copies of the documents were necessary"). Consequently, the undersigned **RECOMMENDS** that these costs not be taxed against Plaintiff.

Two of the three invoices (6/17/2014 TransPerfect Invoice, and 8/29/2014 Ricoh Invoice) from outside vendors indicated that the copies were made for depositions. The Transperfect invoice totaled $3,579.14 in black and white copies, at .10 per page, and color copies, at .79 per page. The Ricoh invoice totaled $2,448.40 in black and white copies, at .10 per page, and color copies, at .75 per page. The undersigned finds that these invoices may be taxed against Plaintiff. In this connection, the undersigned finds that the requested rate of $.10 per black and white copies is reasonable. James v. Wash Depot Holdings, Inc., 242 F.R.D. 645, 652 (S.D. Fla. 2007) (holding reasonable rate of ten cents per page for copying in Southern District). However, the rate of $.79 per page for color copies is not within the reasonable range of rates for the Southern District of Florida. See Castillo v. Teledyne Continental Motors, Inc., No. 08-21850-CV, 2011 WL 1343051, at *4 FN 14 (S.D. Fla. Mar. 16, 2011) (finding rate of $.35 to be reasonable for color copies). Given limited guidance on this issue, the undersigned finds that the rate for the color copies should be reduced to $.35 per page. As such, for these two invoices, the undersigned **RECOMMENDS** that Defendants recover $3,464.90 in black and white copies and color copies at the reduced rate.

The remaining invoice from outside vendor Ricoh, dated 7/9/14, in the amount of $244.20, does not specify what the copies were for and so is not recoverable. As such, the undersigned

**RECOMMENDS** that these costs not be taxed against Plaintiff.

The Court will accept that the charges incurred on 6/30/14, 7/31/14, 9/30/14, and 10/31/14, totaling $747.27, were for discovery. The undersigned finds that the balance of the requested copying costs are not recoverable, as Defendants failed to specifically identify that they were necessarily incurred and were not merely for convenience and failed to show the nature of the copied documents or how they were used in the case.

Accordingly, the undersigned **RECOMMENDS** that Defendants be awarded a total of $4,212.17 in copying costs.

**B. Document Production.** Defendants sought to recover the costs of preparing documents for production in-house by either Fenwick & West, LLP, or Vinson & Elkins, LLP. Plaintiff objected to this expenditure arguing that it constituted paralegal time for preparing and processing documents for production, at an hourly rate of $260.00, which was not recoverable under § 1920. Defendants argued that the individuals who spent time preparing documents for production–David Tran, Brad Bonnington, Janice Sossaman, Lynn Young, and Laura McDuffie–were not paralegals, but rather in-house technology and document production specialists. Moreover, Defendants argued that they likely saved substantial sums of money by preparing documents for production in-house rather than outsourcing to a vendor.

Though § 1920 has been broadened to allow for copying materials, as opposed to just papers, many courts, including Race Tires America, Inc. v. Hoosier Racing Tire Corp., 674 F.3d 158, 169 (3d Cir. 2012), Country Vintner of North Carolina, LLC v. E. & J. Gallo Winery, Inc., 718 F.3d 249, 260 (4th Cir. 2013), and Finnerty v. Stiefel Laboratories, Inc., 900 F.Supp.2d 1317, 1322 (S.D. Fla. 2012), have concluded that the amended statute, though broader, does not permit the taxation of all

electronic discovery costs. In <u>Race Tires</u>, the Third Circuit persuasively reasoned that "only the conversion of native files to TIFF (the agreed-upon default format for production of electronic discovery), and the scanning of documents to create digital duplicates are generally recognized as the taxable 'making copies of material.'" <u>Race Tires</u>, 674 F.3d at 167. Although the Eleventh Circuit has not adopted <u>Race Tires</u>, the undersigned finds the Third Circuit's reasoning persuasive. "A holding to the contrary . . . would muddy the distinction between taxable costs, which are generally available to the prevailing party, and attorneys fees, which generally are not available absent a fee-shifting agreement or statute." <u>Finnerty</u>, 900 F.Supp.2d at 1322.

Invoices for 6/17/14, 7/30/14, 7/31/14, 8/8/14, 9/4/14, 9/10/14, 10/8/14, 10/14/14, 10/16/14, totaling $3,263.00, set forth that they were for preparation of data in anticipation of document production. This description is insufficient for the Court to determine whether the costs are properly recoverable under § 1920. Invoices for 12/1/14, 12/2/14, 12/4/14, 12/4/14, 12/9/14, 12/10/14, totaling $5,968.00, set forth that they were for, *inter alia*, preparation of production disks for production; production processing; creation of production database; identification of documents for production; and preparation of source code files for production. None of these tasks appear to constitute making copies under § 1920. As such, the undersigned **RECOMMENDS** that these costs be denied in their entirety.

### Recommendation

Accordingly, it is hereby **RESPECTFULLY RECOMMENDED** that Defendants' Motion for Attorneys' Fees Pursuant to 35 U.S.C. § 285 (ECF No. 166) be **DENIED**, Defendants' Bill of Costs (ECF No. 160) be **GRANTED IN PART AND DENIED IN PART,** as set forth herein, and Defendants recover the amount of $14,063.78 in costs.

Pursuant to S.D. Fla. Magistrate Rule 4(b), the parties may serve and file written objections to this Recommendation with the Honorable Darrin P. Gayles, United States District Judge for the Southern District of Florida, within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file timely objections shall bar the parties from attacking on appeal any factual findings contained herein. RTC v. Hallmark Builders, Inc., 996 F.2d 1144 (11th Cir. 1993); LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1988).

**RESPECTFULLY RECOMMENDED** in Chambers at Miami, Florida, this 20th day of November 2015.

**WILLIAM C. TURNOFF**
**United States Magistrate Judge**

cc: Hon. Darrin P. Gayles
All Counsel of Record